Rodney Frances PHARO v. STATE of Arkansas

CA CR 89-6                                        783 S.W.2d 64

Court of Appeals of Arkansas
En Banc
Opinion delivered January 24, 1990
[Rehearing denied March 14, 1990.*]

---

*Cooper, J., would grant rehearing.

*Law Office of Ronald E. Bumpass*, by: *Laurie A. Hanson*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. The appellant, Rodney Frances Pharo, was initially charged by information with criminal attempt to commit murder in the first degree, a violation of Ark. Code Ann. §§ 5-3-201 (1987) and 5-10-102 (Supp. 1987). The appellant was found guilty by a jury of battery in the first degree, a violation of Ark. Code Ann. § 5-13-201 (Supp. 1987). From this conviction, the appellant received a ten year sentence and a $5,000 fine. On appeal, the appellant raises the following three issues for reversal: (1) that the trial court's ruling excluding expert testimony on the physiological effects of alcohol consumption was a violation of the "due process" clause of the Fourteenth Amendment; (2) that the trial court's ruling denying a jury instruction regarding battery in the third degree was error; and (3) that the prosecutor's comments on the appellant's exercise of his post-*Miranda* right to remain silent was a violation of the Fifth and Fourteenth Amendments. We find no reversible error and affirm.

The record reveals that the appellant was employed as an area superintendent for Texas Contractors at the Fayetteville Sewage Treatment Plant construction site. The appellant regularly carried a gun while on the job as it was customary for him to transport the payroll. After work on the evening of January 27, 1988, the appellant frequented three clubs in the Fayetteville

area. Over the course of the evening, the appellant consumed an excessive amount of alcohol. As he was leaving the last club the appellant was involved in an exchange which resulted in the bouncer, David Smart, being shot in the abdomen.

The appellant argued below, and now on appeal, that the shooting was accidental. The appellant contends that the exchange between himself and Smart did not reach volatile proportions, that there were no threats or raised voices, and that after the shooting, the appellant appeared to be stunned and confused.

The appellant's first argument is that the trial court erred in excluding expert testimony as to the physiological effects of alcohol consumption. The appellant sought to introduce the testimony of Carol Tucker, as an expert in the field of alcoholism, who would testify that the appellant did not possess the requisite mental state for the crime charged. The appellant argues that the exclusion of the witness deprived him of "due process" of law citing *In re Winship*, 397 U.S. 358 (1970), which held that the "due process" clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. The appellant's argument is that by excluding testimony that would tend to negate the specific intent requirement, the state was effectively relieved of its burden of proving this element of the offense beyond a reasonable doubt. The trial judge denied the admission of said evidence citing the recent supreme court decision of *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986).

■ The appellant contends that the trial court misapplied the *White* case because the court failed to make a distinction between voluntary intoxication as a defense and *evidence* of voluntary intoxication to negate the existence of a specific element of a crime. The appellant's argument mirrors the common law rule that evidence of voluntary intoxication, while no excuse for a crime, could be admitted to show the defendant was incapable of forming the specific intent necessary for the crime. This rule was discussed in *White* where the court overruled the holding in *Varnedare* v. *State*, 264 Ark. 596, 573 S.W.2d 57 (1978). The court in *Varnedare* had stated that by amending § 41-207 to remove self-induced intoxication as a statutory defense, the legislature, in effect, reinstated any prior Arkansas common

law on the subject. The court in *White* stated that "we are now convinced that our court was wrong in *Varnedare* when we held that the common law defense of voluntary intoxication was reinstated." By saying the common law defense had not been reinstated, the court in *White* effectively held that voluntary intoxication is no longer available as a defense or admissible for the purpose of negating specific intent. Inasmuch as the appellant sought to introduce this testimony to show that he lacked the requisite mental state for the crime charged, this position is contrary to the holding in *White*. We believe the trial court properly applied the rationale of the *White* case to the facts of the case at bar and did not err in excluding this testimony.

■ The appellant contends that the trial judge erred in denying his request that the jury be instructed on battery in the third degree. The state argues that since the appellant did not prepare and offer a proper written instruction on battery in the third degree and have it placed in the records, he is precluded on appeal from a decision on the merits. In order to properly preserve an objection to the court's failure to give an instruction, the appellant must proffer the requested instruction. *Peoples Bank & Trust Co.* v. *Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986); *Henry* v. *State*, 18 Ark. App. 115, 710 S.W.2d 849 (1986). This procedure expedites trial and facilitates compliance with the Arkansas Constitution, Art. 7 § 23, and Ark. R. Crim. P. 33.3, which make it mandatory that the trial judge, when requested by a party or a juror, deliver to the jury a typewritten copy of the oral instructions given by the judge. *Id.*; *Willett* v. *State*, 18 Ark. App. 125, 712 S.W.2d 925 (1986). In this case the text of the proposed instruction does not appear in the abstract or in the transcript. In *Green* v. *State*, 7 Ark. App. 175, 646 S.W.2d 20 (1983), we held that where a requested instruction does not appear in either the abstract or the transcript, we would not consider it error for the refusal to give the instruction. Therefore, we find no error on this issue.

The appellant's third contention is more troublesome. The appellant argues that the prosecutor's comments upon his post-arrest silence constitute prejudicial error. The appellant cites *Doyle* v. *Ohio*, 426 U.S. 610 (1976), for the proposition that the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violated the "due

process" clause of the Fourteenth Amendment. As the court explained in *Doyle*:

> When a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.

Our supreme court has discussed and made reference to the rationale of the *Doyle* decision in concluding that the prosecution is on dangerous ground and courting prejudicial error when any reference is made concerning an accused's election to remain silent. *See Jarreau v. State*, 291 Ark. 60, 722 S.W.2d 565 (1987); *Stephens v. State*, 290 Ark. 440, 720 S.W.2d 301 (1986); *Hobbs v. State*, 277 Ark. 271, 641 S.W.2d 9 (1982).

In the case at bar, the following colloquy occurred on cross examination of the appellant:

> Q: Okay. You told them exactly what happened?
>
> A: I assume I have the right to a defense. I don't have to give the evidence that's going to convict me of the crime until I got a defense.
>
> Q: Well, did you tell them about that?
>
> A: I didn't tell the police department nothing. I have a right not to.
>
> . . . .
>
> Q: Did you ever tell them it was an accident that you shot this person?
>
> A: I just told you that they said I had a right to remain silent and I chose the right to remain silent.
>
> Q: So therefore you did . . .
>
> A: Is that wrong?

Q: Not mention to them that it was an accidental shooting?

A: If I chose the right to remain silent, I don't have to mention to them that. That's my legal right.

. . . .

Q: Did you at any point in time tell the police that the shooting was accidental?

A: No.

Q: Did you tell the police that you were in such a daze that you didn't even realize that you'd shot somebody?

A: No.

Q: Did you ever tell the police that you didn't even know the person and couldn't identify him if you saw him again, the person that you might have shot?

A: No.

Q: Did you ever tell the police that you were so intoxicated that you didn't know what you were doing on that night?

A: No.

. . . .

Q: But you never thought about going to the police station the following day, did you?

A: Not when I found the gun in my pocket and the hole.

Q: There was nothing stopping you, was there, Mr. Pharo, on that next day instead of going down to the hospital going down to the police station and bringing the jacket and gun and saying, "Hey, I must have shot somebody. I'm sure sorry about it."?

A: Yes, the thing that was stopping me, the intelligence enough to know that I ought to talk to a lawyer before I go to the police department.

Q: Didn't you think the police would believe you?

A: Well, I'm here now to tell what happened. You don't believe me now so what would make you think the police

would believe me?

Q: You think this jury's going to believe you today, so why didn't you think the police and prosecutor might have believed you back on January 28?

A: It's a simple fact . . . .

We do not disagree with the appellant's contention that the prosecutor's repetitive comments implicated the exercise of his right to remain silent, and was thus clearly in error. However, we do not believe this constitutes reversible error for the following reasons: (1) the appellant did not object at the first opportunity; (2) the appellant did not request or receive a definitive ruling on his objection; and (3) the appellant neither requested nor received any curative relief.

■ Initially, we note that the appellant did not make a timely objection to the prosecutor's comments regarding the exercise of his right to remain silent. An argument for reversal will not be considered in the absence of an appropriate objection in the trial court. To be considered appropriate, an objection must be made at the first opportunity. *Dillard* v. *State*, 20 Ark. App. 35, 723 S.W.2d 373 (1987). The objection must be timely, affording the trial court an opportunity to correct the asserted error. *Clark* v. *State*, 26 Ark. App. 268, 764 S.W.2d 458 (1989); *see also, Gustafson* v. *State*, 267 Ark. 830, 593 S.W.2d 187 (1980).

In *Hill* v. *State*, 285 Ark. 77, 685 S.W.2d 495 (1985), a case remarkably similar to the present case, the appellant's objection concerning his right to remain silent was held untimely as the impermissible questioning had been asked in various forms without an objection. Although admittedly the questioning in this case was more extensive than that in *Hill*, and it does without a doubt constitute error, the appellant failed to object at a time when perhaps the error could have been avoided, or the prejudice removed. We have consistently held that "we require a timely objection made at the time the alleged error occurs, so that the trial judge may take such action as is necessary to alleviate any prejudicial effect on the jury." *Gustafson, supra.*

■ In addition, we note that in Arkansas our courts do not have a "plain error" rule. As stated in *Wicks* v. *State*, 270 Ark.

781, 606 S.W.2d 366 (1980):

> Some courts, especially the federal courts, have a "plain error" rule, under which plain errors affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Federal Rules of Criminal Procedure, Rule 52(b); *State v. Meiers*, 412 S.W.2d 478 (Mo., 1967). In Arkansas, however, we do not have such a rule. *Smith v. State*, 268 Ark. 282, 595 S.W.2d 671 (1980). To the contrary, in hundreds of cases we have reiterated our fundamental rule that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court.

In the absence of a "plain error" rule, it is incumbent upon an appellant to make a timely objection in the trial court to preserve the issue on appeal. In the case at bar, the appellant failed to object at the first opportunity, thereby allowing repeated questioning on this subject.

Secondly, the appellant neither requested nor received a definitive ruling on his objection. The objection and ruling were as follows:

> *MS. HANSON*: Your Honor, I'm going to object to this line of questioning. I think it's argumentative. And I believe it goes to the perview [sic] of Mr. Pharo's right to remain silent.
>
> *THE COURT*: Well I think the problem is we're beginning to get a little argumentative and repetitious. We've covered this pretty much.

The trial court's ruling only addressed the argumentative aspect of the appellant's objection. The appellant never requested or received a ruling regarding the exercise of his right to remain silent. The burden of obtaining a ruling is upon the movant and objections and questions left unanswered are waived and may not be raised on appeal. *Williams v. State*, 289 Ark. 69, 709 S.W.2d 80 (1986); *Young v. State*, 14 Ark. App. 122, 685 S.W.2d 823 (1985). In addition, one final question was asked of the appellant at which time he again failed to object.

■   Furthermore, the appellant failed to request any curative relief. Apparently, the appellant was satisfied with the trial judge's ruling since he failed to seek any curative relief and subsequently failed to object during closing argument when further comment was made. Since the appellant requested neither an admonition nor a mistrial, no reversible error occurred. *Vick* v. *State*, 299 Ark. 25, 770 S.W.2d 653 (1989); *Jurney* v. *State*, 298 Ark. 91, 766 S.W.2d 1 (1989); *Daniels* v. *State*, 293 Ark. 422, 739 S.W.2d 135 (1987). Where the appellant was given all the relief he requested, he has no basis upon which to raise the issue on appeal. *Mitchell* v. *State*, 281 Ark. 112, 661 S.W.2d 390 (1983).

After a careful and thorough consideration of the record and briefs filed by both parties, we find no reversible error in the points raised on appeal. We therefore affirm the appellant's conviction of battery in the first degree.

AFFIRMED.

COOPER, J., dissents.

JAMES R. COOPER, Judge, dissenting. I agree with the majority opinion with the exception of its holding concerning the appellant's post-arrest silence. I dissent on that point because I believe that the merits of the appellant's argument should be addressed and this case should be reversed and remanded. While it is clear that the objection by the appellant's attorney was too late, I believe that the appellant himself raised an adequate objection.

In order to preserve an issue for appeal, a timely objection, made at the first opportunity, must be made. *Robinson* v. *State*, 278 Ark. 576, 648 S.W.2d 444 (1983). In the present case, immediately after the first question concerning his silence, the appellant asserted that he had a right not to talk to the police until he had an attorney. An objection must also be made to the trial court with sufficient clarity to give the trial judge a fair opportunity to discern and consider the argument. *Abernathy* v. *State*, 278 Ark. 250, 644 S.W.2d 590 (1983). After the first question, the prosecutor continued to question the appellant as to why he did not tell the police that the shooting was an accident. The appellant continued to reply that he "chose his right to remain

silent," and that he did not have to "talk to them." Although the appellant's remarks were not artful, a reading of the record makes it plain that the appellant did assert his right to remain silent and did not intend to directly answer the prosecutor's questions. The issue was placed squarely before the trial court. Furthermore, I believe that the appellant did obtain a ruling to his objection when, after fifteen such questions and answers, the trial court ordered the appellant to give a more responsive answer to the State's questions.

Because we do not have a "plain error" rule in the State, we place upon defendants the heavy burden of requiring an objection before an alleged error will be reviewed. Although I agree with the rule in its general principles; I do not believe that it should be construed so rigidly that this appellant, who valiantly attempted to register his objection while his attorney stood idly by, is summarily denied appellate review of an error which the majority concedes is prejudicial.

I am not unmindful of the general rule that a client is bound by the actions his attorney takes at trial. *See* 7A C.J.S. *Attorney and Client*, § 208 (1980). However, counsel's decisions regarding trial strategy may not be binding where there are exceptional circumstances, or evidence of fraud, gross negligence, or incompetence on the part of the attorney. C.J.S., § 208, *supra.*

Clearly the case at bar constitutes exceptional circumstances. The appellant raised the fact that he had a right to remain silent fifteen times before being ordered by the trial court to be more responsive. The State then asked nine more questions regarding what he told the police before the appellant's attorney finally objected. The State asked three more questions on this subject and then referred to it again during closing arguments. Given the appellant's numerous attempts to object to the improper questioning and given the repetitiveness of the State's questioning, I believe that an exceptional circumstance has arisen in which we should recognize the appellant's objection for appellate review purposes.

Furthermore, I assert that this State has placed a duty on defendants to make their own objections known when counsel has failed to object. It has been said many times that ineffective assistance of counsel cannot be raised for the first time on appeal,

*see Orsini* v. *State*, 287 Ark. 456, 701 S.W.2d 114 (1985), and it is unlikely that a defense attorney will object on the basis that his own assistance was ineffective. This leads me to conclude that the defendant himself must take affirmative steps in order to preserve the issue for appeal; by hiring new counsel to file a post-trial motion or to raise the issue himself during trial.

This duty to object does not apply only to allegations of ineffective assistance of counsel. In *Dyas* v. *State*, 260 Ark. 303, 539 S.W.2d 251 (1976), the last names of the trial judge and the prosecutor were the same. On appeal, the appellant asserted that the trial judge should have recused because of his relationship with the prosecutor. In refusing to address the issue because it was not raised on appeal the Supreme Court noted that the attorneys had refused the trial judge's offer to disqualify himself and that the appellant failed to object. In another case, *Irons* v. *State*, 272 Ark. 493, 615 S.W.2d 374 (1981), there was an unreported bench conference immediately following the jury selection. After discussing the fact that the appellant had not demonstrated how he was prejudiced, the court noted that the appellant had not objected below.

In both *Dyas* and *Irons*, the defense attorneys took actions which the defendant later complained of on appeal. In both cases the Supreme Court mentioned the lack of an objection, and inferred that had the appellant himself objected the alleged error would have been addressed. I maintain that *Irons*, *Dyas* and the present case constitute exceptional circumstances in which the appellant himself must register his own objection to preserve the error for appellate review. Where counsel, for whatever reason, fails to object, it is clear that the only way appellate review can be had is to recognize an objection made by the defendant himself.

In closing I would note that the majority concedes that the questioning by the State constituted prejudicial error, and with that conclusion I concur. *Doyle* v. *Ohio*, 426 U.S. 610 (1976). To hold otherwise would render the right to remain silent meaningless because the State could, as it did in this case, use the defendant's post-arrest silence to imply that the defendant was hiding his guilt. I would recognize the appellant's objections and reverse and remand on the merits of this issue.